UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | |
| Plaintiff, | Civil Action No. 17-652 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

**MEMORANDUM OPINION**

On March 9, 2017, Scott Pruitt, the Administrator of the Environmental Protection Agency ("EPA"), appeared on the CNBC program "Squawk Box" and stated, regarding carbon dioxide created by human activity, that "I would not agree that it's a primary contributor to the global warming that we see," and "there's a tremendous disagreement about of [sic] the impact" of "human activity on the climate." Compl., ¶ 18–19, ECF No. 1. Noting that these public statements by the EPA Administrator "stand in contrast to published research and conclusions of the EPA," *id.* ¶ 20, the plaintiff, Public Employees for Environmental Responsibility ("PEER"), a "non-profit organization dedicated to research and public education concerning the activities and operation of [the] federal . . . government[]," *id.* ¶ 2, submitted a request to EPA, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for agency records "relied upon by Administrator Pruitt in making these statements and any EPA documents that support the conclusions that human activity is not the largest factor driving global climate change," Compl. ¶ 21. EPA has performed no search for and produced no records in response to the plaintiff's FOIA request. *See generally*, Def.'s Mot. Summ. J. ("Def.'s MSJ"), Ex. C, Decl. of Brian Hope,

1

Deputy Director, Office of Executive Secretariat, Office of the EPA Administrator (Nov. 8, 2017) ("EPA Decl."), ECF No. 13-5.  Nonetheless, on this record, EPA now seeks summary judgment, Def.'s MSJ, ECF No. 13, and the plaintiff has cross-moved for summary judgment, Pl.'s Cross-Mot. Summ. J. & Opp'n Def.'s MSJ ("Pl.'s Cross-Mot."), ECF No. 14.  For the reasons set forth below, the plaintiff's cross-motion is granted, and EPA's motion is denied.

**I.     BACKGROUND**

The day after Administrator Pruitt made on-air public statements to the effect that "carbon dioxide created by human activity is not the primary driver of global climate change," Pl.'s Mem. Supp. Pl.'s Cross-Mot. & Opp'n Def.'s MSJ ("Pl.'s Opp'n") at 1, ECF No. 14-3, the plaintiff filed the FOIA request at issue, Compl. ¶ 21; EPA Decl. ¶ 3.  As the plaintiff points out, in contrast to Administrator Pruitt's statements on March 9, 2017, EPA states, on its "Causes of Climate Change" web page, that "'[c]arbon dioxide is the primary greenhouse gas that is contributing to recent climate change' and that '[t]he primary human activity affecting the amount and rate of climate change is greenhouse gas emissions from the burning of fossil fuels.'"  Compl. ¶ 20 (alterations in original).

The plaintiff's FOIA request sought "(1) [t]he documents that Administrator Pruitt relied upon in making these statements; and (2) [a]ny EPA documents that support the conclusion that human activity is not the largest factor driving global climate change."  Def.'s MSJ, Attach. 2, Def.'s Statement of Material Facts Not In Genuine Dispute ("Def.'s SMF") ¶ 2, ECF No. 13-2.  About one month after submission of the request, the plaintiff filed the instant complaint, which EPA answered in late July 2017.  Def.'s Answer, ECF No. 10.  When the parties failed timely to file a Joint Meet and Confer statement, as required by the Court's Standing Order, ¶ 3.a, ECF No. 4, the plaintiff was directed to show cause why the action should not be dismissed for failure

to prosecute, with a deadline of September 12, 2017, to remedy the failure to file the requisite Joint Meet and Confer statement. Minute Order (Aug. 30, 2017). That same day, the parties conferred about narrowing the request, and the plaintiff modified the request in a manner "intended to meet EPA's objections." Jt. Meet & Confer Rpt. (Sept. 8, 2017), ¶ 3, ECF No. 11. Specifically, the plaintiff "agreed to modify the request" as indicated by the following italicized language: "(1) [t]he *agency records* that Administrator Pruitt relied upon to support his statements in his CNBC interview," and "(2) [a]ny EPA documents, *studies, reports, or guidance material* that support the conclusion that human activity is not the largest factor driving global climate change." Def.'s SMF ¶ 6; *see* Def.'s MSJ, Ex. B, Email from PEER's Adam Carlesco to Assistant U.S. Attorney Daniel Schaefer (Aug. 30, 2017), ECF No. 13-4 at 1.

A month later, EPA advised the Court that, in response to the first part of the FOIA request regarding agency records relied upon by Administrator Pruitt for his public statement on March 9, 2017, "the EPA is prepared to search for any briefing materials that were prepared by Administrator Pruitt or certain members of his staff, in the days leading up to the interview," and, to this end, was "preparing a proposal with specific search parameters to assist PEER in clarifying its request." Second Jt. Meet and Confer Report (Oct. 10, 2017) ("2d Jt. Rpt.") at 1, ECF No. 12. EPA noted that "[i]f the parties can negotiate acceptable search parameters, EPA intends to process the first portion of the request in accordance with those parameters." *Id.* at 2. At the same time, EPA dismissed the second part of the FOIA request, regarding agency records supporting the conclusion publicly stated by Administrator Pruitt on March 9, 2017, as "not a proper request under FOIA," *id.*, a characterization disputed by the plaintiff, *id.* at 3. The plaintiff declined to make additional changes to either part of the FOIA request and sought a briefing schedule to resolve the parties' "impasse." *Id.*; *see also* Pl.'s Opp'n at 5 (noting that

3

plaintiff "had already sufficiently clarified the request and that EPA was unreasonably stalling its response"). In contrast, EPA sought "to defer setting a summary judgment schedule until after EPA finishes processing any responsive records as to part one of the request, so that any and all remaining disputed issues can be dealt with together." 2d Jt. Rpt. at 2.

Although more than one year has elapsed since the plaintiff submitted the FOIA request, EPA has conducted no search for any responsive records, nor produced any records to the plaintiff. *See* Def.'s Reply Supp. Def.'s MSJ & Opp'n Pl.'s Cross-Mot. ("Def.'s Reply"), Attach. 1, Def.'s Resp. Pl.'s Statement of Material Facts Not In Genuine Dispute ¶ 6, ECF No. 19-1 ("EPA does not dispute that it had not conducted a search for responsive documents."); *id.* ¶ 8 ("It is undisputed that EPA did not conduct the proposed search for the briefing materials.").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)) (alteration adopted). The D.C. Circuit has observed that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA provides "a means for citizens to know 'what their Government is up to,'" *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (quoting *U.S. Dep't of Justice v.*

*Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)), and was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request," *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)); *see also Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976) (noting "the basic policy that disclosure, not secrecy, is the dominant objective of the Act"). To this end, the FOIA commands that federal agencies make "promptly available to any person" records that are not otherwise exempt in response to "any request for records which (i) *reasonably describes such records* and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A) (emphasis supplied).

The D.C. Circuit has long cautioned that federal agencies may not use the "reasonably describes" requirement to deny the public access to responsive records, explaining that, "[b]efore 1967, the Administrative Procedure Act contained a Public Information section 'full of loopholes which allowed agencies to deny legitimate information to the public.'" *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)) (alteration adopted). The FOIA was enacted "to close those loopholes," and "to avoid creating new ones." *Id.*; *see also Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (observing that FOIA was enacted "to permit access to official information long shielded unnecessarily from public view" due to "the public-disclosure section of the Administrative Procedure Act" being "plagued with vague phrases and gradually bec[oming] more a withholding statute than a disclosure statute"); *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) (noting that "courts have been wary to prohibit this requirement from becoming a loophole through which federal agencies can deny the public access to legitimate information"

(quoting *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978))). Thus, the statutory requirement that a record request "reasonably describes such records," 5 U.S.C. § 552(a)(3)(A), like its predecessor "requirement that a request for disclosure specify 'identifiable records[,]' calls for 'a reasonable description enabling the Government employee to locate the requested records,' but it is 'not to be used as a method of withholding records,'" *Bristol-Myers Co.*, 424 F.2d at 938 (quoting S. Rep. No. 813 at 8); *see also* H.R. Rep. No. 93-876 93d Cong., 2d Sess., at 6 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6267, 6271 (noting that a description would "be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort").

The "FOIA's prodisclosure purpose," *Nat'l Archives & Records Admin.*, 541 U.S. at 174, and legislative history reflect an intent to avoid creating loopholes for denial of access and reinforces the duty of federal agencies "to construe a FOIA request liberally," *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (quoting *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982))). Consequently, once an "agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth," *Truitt v. U.S. Dep't of State,* 897 F.2d 540, 544 (D.C. Cir. 1990), and "disclose all reasonably segregable, nonexempt portions of the requested record(s)," *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 (D.C. Cir. 2003).

Likewise, "if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *see also Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 407 (D.C. Cir. 2017) (same). The law is well settled that "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland*, 607 F.2d at 353); *see also Judicial Watch, Inc. v. U.S. Dep't of State*, 681 F. App'x 2, 4 (D.C. Cir. 2017) (noting that agencies "need not respond to overly broad and unreasonably burdensome requests"); *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 664 (D.C. Cir. 2003) ("We have held that there are limits to the lengths to which an agency must go in responding to a FOIA request."). An agency claiming that a search would be unreasonably burdensome is required, however, to "provide sufficient explanation as to why such a search would be unreasonably burdensome" in a "detailed affidavit[]." *Nation Magazine*, 71 F.3d at 892; *see also Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 165 (D.C. Cir. 2001) (reversing grant of summary judgment to agency, which had "point[ed] to nothing in the record to suggest that the search actually required will be unduly burdensome").

## III. DISCUSSION

More than one year after the plaintiff submitted its two-part FOIA request for agency records underlying a specific public statement by the agency head and expressing the same conclusion reflected in that public statement, EPA has still not conducted a search. EPA contends that the FOIA request at issue, even as amended, amounts to an improper interrogatory and that the request is otherwise overbroad and unduly burdensome. As a result, in EPA's view, the request falls short of meeting the statutory threshold of "reasonably describ[ing]," 5 U.S.C. §

552(a)(3)(A), the requested records by "enabl[ing] a professional employee . . . to conduct a search for responsive Agency records," EPA Decl. ¶ 9. These excuses for failing to comply with the agency's statutory obligations under the FOIA are not persuasive.

### A. THE FOIA REQUEST DOES NOT POSE AN IMPROPER QUESTION

EPA contends that no response to the FOIA request is required because the request is actually "an impermissible attempt to compel EPA and its Administrator to answer questions and take a position on the climate change debate." Def.'s Reply at 6, ECF No. 19. According to EPA, "both the First and Second Requests would require EPA to spend countless hours researching and analyzing a vast trove of material on the effect of human activity on climate change" and "evaluate whether a particular document supports or refutes, or even relates to, Plaintiff's proposition concerning the effect of human activity on climate change," an evaluation amounting to "a subjective assessment upon which reasonable minds can differ." Def.'s Mem. Supp. Def.'s MSJ ("Def.'s Mem.") at 6, ECF No. 13-1. This hyperbolic objection strays far afield from the actual text of both parts of the FOIA request. *See* Pl.'s Opp'n at 11 ("EPA has twisted the meaning of the request to justify denying it.").[1]

### *1. First Part of FOIA Request For Agency Records Relied Upon by EPA Administrator*

The first part of the FOIA request, as amended, seeks "[t]he agency records that Administrator Pruitt relied upon to support his statements in his CNBC interview" on March 9,

---

[1] Indeed, the plaintiff does not dispute EPA's position that the agency is not "obligated to respond to questions, requests for research . . . [or] to generate explanatory materials," Def.'s Mem. at 8; *see* Pl.'s Reply Supp. Pl.'s Cross-Mot. ("Pl.'s Reply") at 11, ECF No. 22 (expressing "no quarrel with these general principles, but they have no application here"). At the same time, due to EPA's mis-construction of the FOIA request at issue, the cases cited by the agency for this undisputed legal proposition are generally inapposite. *See* Def.'s Mem at 8 (citing, *e.g.*, *Jimenez v. Exec. Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 181–82 (D.D.C. 2011), *aff'd sub nom. Jimenez v. Exec. Office ex rel. U.S. Attorneys*, No. 11-5206, 2012 WL 556176 (D.C. Cir. Feb. 13, 2012) (holding an agency "is not obligated to respond to questions, requests for research or, as in this case, a request to authenticate or verify the contents of a particular document" in response to request for forged indictment the plaintiff believed to exist); *Anderson v. U.S. Dep't of Justice*, 518 F. Supp. 2d 1, 10 (D.D.C. 2007) ("To the extent that plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests.")).

2017. EPA Decl. ¶ 6. To bolster its position that this straight-forward request "is improper and amounts to an interrogation of the Administrator," Def.'s Reply at 1, EPA cites plaintiff's counsel's suggestion in an email that government counsel could "simply ask th[e] Administrator what agency records he relied upon," *id.* at 3 (quoting *id.*, Ex. D at 1, Email from PEER's Paula Dinerstein to Assistant U.S. Attorney Daniel Schaefer (Oct. 10, 2017), ECF No. 19-3). The plaintiff's suggestion is best understood as a proposed search approach to ensure EPA provides a complete response to the first part of the FOIA request. *See* Pl.'s Opp'n at 11–12 ("PEER was not suggesting that EPA query Mr. Pruitt about his views on climate policy, but merely suggesting that he was a likely custodian of the records that he relied on in his statements on national television, and therefore could assist in locating records responsive to the request."). The agency's twisted interpretation of plaintiff's counsel's suggestion as evidence that the FOIA request was intended to operate as "an interrogation" is simply a reach too far.

EPA further criticizes the FOIA request as "vague or unclear," Def.'s Mem. at 10, despite the precise text used in the first part of the FOIA request detailing the date, the speaker, and the specific statements made for which the underlying agency records were sought. EPA's reasoning for this criticism is both misplaced and troubling. The agency asks "how is one to even know precisely what documents one relies on in forming one's beliefs?," *id.*, and, further, whether "an article [would] be responsive" if "the Administrator reviewed an article or paper about climate change months, or even years, prior to his appearance?," *id.*, or "[m]ust the Administrator identify every paper he has ever reviewed on climate change that may have played some role in forming his beliefs, and then determine if these papers are 'agency records'?," *id.* As the plaintiff points out, however, nothing in the FOIA request seeks information "about Administrator Pruitt's beliefs or how they were formed." Pl.'s Reply Supp. Pl.'s Cross-Mot.

9

("Pl.'s Reply") at 7, ECF No. 22. Instead, the FOIA request appropriately targets for disclosure agency records that EPA's Administrator relied on, whether or not those records reflected his personal beliefs or the conclusions he publicly articulated on March 9, 2017, about the causes of climate change.

Particularly troubling is the apparent premise of this agency challenge to the FOIA request, namely: that the evidentiary basis for a policy or factual statement by an agency head, including about the scientific factors contributing to climate change, is inherently unknowable. Such a premise runs directly counter to "an axiom of administrative law that an agency's explanation of the basis for its decision must include 'a rational connection between the facts found and the choice made,'" *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (quoting *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)), and the "responsibility of the agency to explain the rationale and factual basis for its decision," *id.* at 627. EPA's strained attempt to raise an epistemological smokescreen will not work here to evade its obligations under the FOIA.

EPA also seemingly discounts any reason for public interest in the EPA Administrator's public statement on March 9, 2017, stating that "[t]here is no Agency decision implicit in the Administrator's statements on a talk show," Def.'s Reply at 12, and that "there is no administrative record or file regularly compiled to support individual statements of personal opinion," *id.* The public statements of an agency head about the causes of climate change, even if those statements do not reflect an "Agency decision," but merely "personal opinion," may nonetheless guide the agency's regulatory efforts and, to the extent any agency records provide the basis for such public statements, those agency records are a perfectly proper focus of a FOIA request.

10

The D.C. Circuit's decision in *Bristol-Myers Co.* is instructive on this point. There, the FOIA request sought "documents relevant to a rulemaking proceeding" that the Federal Trade Commission ("FTC") had stated was initiated "on the basis of . . . available studies and reports." *Bristol-Myers Co.*, 424 F.2d at 937 (internal quotations omitted).[2] The Circuit reversed the District Court's ruling for the agency "that the material sought did not constitute 'identifiable records,' whose production is required by statute." *Id.*[3] In so doing, the Circuit explained that "[t]he F.T.C. can hardly claim that it was unable to ascertain which documents were sought" since the agency "relied on certain materials in promulgating its proposed rule, and referred to them in announcing the rulemaking proceeding." *Id.* at 938. Thus, "[t]hese materials are adequately identified in the request for disclosure of the items mentioned in the Commission's Notice." *Id.*

As in *Bristol-Myers Co.*, EPA can claim no confusion over the records sought in the first part of the FOIA request since the agency represented to this Court that EPA was "processing any responsive records as to part one of the request . . . ." 2d Jt. Rpt. at 2. In an abrupt about-face, EPA now denies any obligation to respond to the request, due not only to the nature of the request, but also because of the plaintiff's refusal to agree to EPA's terms. This justification for EPA's refusal to search for responsive briefing materials is equally concerning.

---

[2] The FOIA request upheld by the Circuit in *Bristol-Myers Co.* "sought the identification and disclosure of 'each item of material, whatever its form or nature, which . . . has contributed to or constitutes' the 'extensive staff investigation,' 'accumulated experience,' 'available studies and reports' and 'other things' referred to in the Commission's Notice," *Bristol-Myers Co.*, 424 F.2d at 938 n.7, as well as "each item which has contributed to or constitutes information concerning the effect of any analgesic and information concerning the accuracy of appellant's assertions concerning the effects of various ingredients of its own analgesic products," *id.* n.8, and thus appears to be even broader than the FOIA request at issue in this case.

[3] "The language 'request for records which . . . reasonably describes such records' was inserted in 1974 in replacement of the words 'request for identifiable records,' the terminology of [FOIA's] Section 3 as originally enacted in 1967." *Truitt*, 897 F.2d at 544 (footnotes omitted).

11

According to EPA, the agency's "offer to search for briefing materials was conditioned on Plaintiff's agreement to limit the scope of the request to those materials." Def.'s Reply at 14. In other words, only if the plaintiff agreed to drop the second part of the FOIA request at issue would EPA agree to conduct a search for *any* part of that request. The problem here is not the plaintiff's refusal to make additional modifications to the FOIA request, but EPA's demand for specific modifications as a condition for any response. *See* Pl.'s Reply at 2 (urging that the "Court should not countenance EPA's novel claim that citizens lose their right to have agencies fully respond to FOIA requests if they do not accept a bargain to narrow their legitimate requests in return for receiving any documents at all.").

EPA's obligation to respond to the request, which the agency concedes it could do, is not conditional. *See* 5 U.S.C. § 552(a)(3)(A); *Reporters Comm*, 877 F.3d at 407; *Valencia-Lucena,* 180 F.3d at 327. The FOIA encourages agencies to confer with requestors regarding "the scope of the request" and "an alternative time frame for processing the request or a modified request," 5 U.S.C. § 552(a)(6)(B)(ii), but any refusal by the requestor "to reasonably modify the request or arrange such an alternative time frame," *id.*, may only be considered as a factor "in determining whether exceptional circumstances exist" to warrant additional time for the agency to comply with the request for records, *id.*; *see also id.* § 552(a)(6)(C). In other words, EPA's effort to confer with the plaintiff to downsize the scope of the FOIA request at issue is statutorily sanctioned and even encouraged, but the plaintiff's refusal to drop the second part of the FOIA request does not excuse the agency from conducting a search and responding to the request in full. Even where, as here, the agency "claim[s] that FOIA's provision that requests for records 'reasonably describe[] such records' ha[s] not been complied with," *Truitt*, 897 F.2d at 541

(second alteration in original), the fact that EPA was "reasonably clear as to the materials desired," *id.* at 544, means that it had an "obligation to bring them forth," *id.*

Accordingly, any agency records compiled, prepared, provided, used, or reviewed by Administrator Pruitt in connection with his public statements on March 9, 2017, must be searched for and disclosed unless exempt.

### 2. *Second Part of FOIA Request For Agency Records Concluding "Human Activity is Not The Largest Factor Driving Global Climate Change"*

The second part of the FOIA request, as amended, is also straight-forward in seeking agency records, including "studies, reports, or guidance material[,] that support the conclusion that human activity is not the largest factor driving global climate change." Def.'s MSJ, Ex. B, Email from PEER's Adam Carlesco to Assistant U.S. Attorney Daniel Schaefer (Aug. 30, 2017), ECF No. 13-4 at 1. EPA construes this request broadly as requiring the agency "to take a position and make an affirmative statement as to what this material does or does not demonstrate," Def.'s Mem. at 7–8, and "take a position about what conclusions all of the documents in its possession potentially related to climate change may or may not support, *id.* at 9.

At the outset, EPA's apparent concern about taking a position on climate change is puzzling since EPA has already taken a public position on the causes of climate change. The D.C. Circuit described as "substantial" the "body of scientific evidence marshaled by EPA," which "scientific evidence of record included support for the proposition that greenhouse gases trap heat on earth that would otherwise dissipate into space; that this 'greenhouse effect' warms the climate; that human activity is contributing to increased atmospheric levels of greenhouse gases; and that the climate system is warming." *Coal. for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102, 120 (D.C. Cir. 2012), *aff'd in part, rev'd in part sub nom. Util. Air Regulatory*

*Grp. v. EPA*, 134 S. Ct. 2427 (2014). "Based on this scientific record, EPA made the linchpin finding: in its judgment, the 'root cause' of the recently observed climate change is 'very likely' the observed increase in anthropogenic greenhouse gas emissions." *Id.*; *see also id.* at 121 ("To recap, EPA had before it substantial record evidence that anthropogenic emissions of greenhouse gases 'very likely' caused warming of the climate over the last several decades."); *Util. Air Regulatory Grp.*, 134 S. Ct. at 2436–37 ("In 2009, EPA announced its determination regarding the danger posed by motor-vehicle greenhouse-gas emissions. EPA found that greenhouse-gas emissions from new motor vehicles contribute to elevated atmospheric concentrations of greenhouse gases, which endanger public health and welfare by fostering global 'climate change.'" (citing Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66496, 66523, 66537 (Dec. 15, 2009))). Given EPA's plain position on climate change presented in litigation before the D.C. Circuit and the Supreme Court, the FOIA request at issue may be viewed as seeking agency records underpinning a potential change in position signaled by Administrator Pruitt's March 9, 2017, public statements.

More significantly for purposes of this litigation, EPA is construing the second part of the FOIA request far more broadly than the text supports in a thinly veiled effort to make the request more complex and burdensome than it is. The plaintiff is not seeking any agency record "that broadly discusses the relationship between air pollution and climate change to find any possible connection with the question of the human role in causing climate change," but only "documents that explicitly draw a conclusion on that subject." Pl.'s Reply at 10 n.2. In fact, the plaintiff makes clear that "PEER is not asking for anyone's 'position' on climate change; nor is it asking for those conducting the search to perform any research or analysis." *Id.* at 9. Rather, the FOIA

14

request targets agency records that reach "conclusions on the causes of climate change, and specifically conclu[de] that humans are not the largest factor," with "no need for the FOIA staff to conduct scientific research or make judgment calls." *Id.* at 10. Thus, as the plaintiff explains, "if the paper drew a conclusion that humans were not the main drivers of climate change, it would be responsive; otherwise not." *Id.* at 10 n.2.

Based on its own over-broad construction, EPA claims that the second part of the plaintiff's request "failed to reasonably describe the records sought." Def.'s Reply at 8. As support, EPA relies on *Yagman v. Pompeo*, 868 F.3d 1075 (9th Cir. 2017), where the Ninth Circuit held that a request seeking "the names and affiliations of those 'as to whom President Obama stated that "we tortured some folks" on August 1, 2014: that is, who are the individuals whom the word "we" refers to?,'" *id.* at 1078, was vague, and would require "Defendants . . . to engage in quite a bit of guesswork to execute" because the request "does not identify specific persons, much less specific documents, types of documents, or types of information," nor "suggest much in the way of times, dates, locations, or even clearly indicate if he is seeking the identities of those who *have* engaged in torture or only those who are *alleged* to have engaged in torture," *id.* at 1081 (emphasis in original). By contrast to the FOIA request considered in *Yagman*, the FOIA request at issue here is far better defined and seeks agency records containing a specific scientific conclusion.[4] Moreover, as the plaintiff notes, Pl.'s Opp'n at 13–14, the

---

[4] Due to EPA's overly broad mis-construction of the FOIA request, the other cases relied upon by the agency are also inapposite. For example, EPA relies heavily on *Hall & Assocs. v. EPA*, 83 F. Supp. 3d 92 (D.D.C. 2015), for the proposition that "a request asking that an Agency prove or disprove statements . . . [is] improper," Def.'s Reply at 10. That case involved a FOIA request for "'all records or factual analyses that show this *statement* [accusing EPA of misconduct] *is incorrect*,'" *Hall*, 83 F. Supp. 3d at 95 (emphasis in original), which is manifestly different from the FOIA request at issue here since the plaintiff's FOIA request does not call for the agency to make any judgments or opine about the causes of climate change, but "only seeks documents that explicitly draw a conclusion" about climate change in the documents themselves, Pl.'s Reply at 10 n.2. Similarly, EPA cites *Dale v. IRS*, 238 F. Supp. 2d 99 (D.D.C. 2002), for the proposition that a response to the FOIA request requiring an "evaluation of whether a document is even conceivably responsive is a subjective assessment . . . outside the scope of FOIA," Def.'s Mem. at 6; *see also* Def.'s Reply at 7 ("Plaintiff demands that EPA conduct an expansive search

*Yagman* Court specifically rejected the same argument asserted by EPA here—that a FOIA request for records serving as the basis for a public official's statement was an inappropriate FOIA request. In fact, the *Yagman* Court held that the "district court erred in concluding that Yagman's request constituted a question rather than a request for records." *Yagman*, 868 F.3d at 1080–81.

Properly construed, and contrary to EPA's objection, the plaintiff's FOIA request fully satisfies the statutory requirement of "reasonably describ[ing]" the records sought. 5 U.S.C. § 552(a)(3)(A).

## B. EPA HAS NOT DEMONSTRATED UNDUE BURDEN

EPA objects to the second part of the FOIA request as overbroad and unduly burdensome. Def.'s Mem. at 9–10; Def.'s Reply at 2, 5–6. As summarized, *supra,* in Part II, "the burden falls on the agency to 'provide sufficient explanation as to why such a search would be unreasonably burdensome.'" *Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 45 (D.D.C. 2013) (quoting *Nation Magazine*, 71 F.3d at 892). The agency can meet this burden "by submitting '[a] reasonably detailed affidavit,'" *Reporters Comm.*, 877 F.3d at 402 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) (alteration in original), which affidavit must be "accord[ed] substantial weight," 5 U.S.C. § 552(a)(4)(B). An agency affidavit, however, must actually demonstrate "why such a search would be unreasonably burdensome." *Nation Magazine*, 71 F.3d at 892.

---

and then make a research-intensive, subjective judgment as to what documents may or may not support a proposition concerning climate change."). The court in *Dale* held that a request for "'*any* and *all* documents, including but not limited to files, that refer or relate in any way to [plaintiff]" was overbroad and lacked specificity, 238 F. Supp. 2d at 104 (emphasis in original), but, again, the instant FOIA request seeks documents containing a specific conclusion about the causes of climate change, Pl.'s Reply at 9–10 & n.2, and does not, as EPA claims, demand disclosure of any materials "that contribute to an understanding of human impact on climate change," Def.'s Mem. at 10.

16

As support for its claim of undue burden, EPA asserts that it "would not even know where or how to begin searching for documents for such a broad, sweeping request," Def.'s Mem. at 10, and that compliance "would require EPA to spend countless hours researching and analyzing a vast trove of material on the effect of human activity on climate change," *id.* at 6. As already discussed, *supra*, Part III.A.2, this assertion is predicated on an incorrect and overly broad construction of the second part of the FOIA request. On this ground alone, EPA's claim of undue burden fails.[5]

In any event, EPA's cursory affidavit provides little explanation for why the plaintiff's FOIA request would create an undue burden. EPA's bare assertion that the FOIA request at issue would not "allow professional staff with a familiarity with the subject matter to process the FOIA request," EPA Decl. ¶ 6; *see also id.* ¶ 9, resembles agency affidavits that have been found wanting, *see, e.g.*, *Nation Magazine*, 71 F.3d at 892 (reversing grant of summary judgment to agency and requiring agency to provide "additional information on the question of whether it maintains topical or subject matter files, and if so, whether these files are likely to contain records responsive to appellants' request" and "further affidavits explaining why a search . . . would be too laborious" to demonstrate "why such a search would be unreasonably burdensome,"); *Pinson v. U.S. Dep't of Justice*, 80 F. Supp. 3d 211, 217 (D.D.C. 2015) (rejecting sufficiency of agency assertion of undue burden where the agency had merely "state[d] that all

---

[5] EPA cites several non-binding cases for the proposition that "a request for all documents that 'relate to' a particular topic is 'inevitably' 'overbroad since life, like law, is a seamless web, and all documents relate to all others in some remote fashion.'" Def.'s Mem. at 9 (quoting *Freedom Watch, Inc. v. U.S. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013). In particular, EPA cites *Sack v. CIA*, 53 F. Supp. 3d 154, 164 (D.D.C. 2014) (holding overbroad a request for "all records that 'pertain[] in whole or in part,'" because this phrase "is difficult to define because a record may pertain to something without specifically mentioning it"), and *Dale*, 238 F. Supp. 2d at 104 (finding FOIA request for "*any* and *all* documents, including but not limited to files, that refer or relate in any way to" an individual did "not describe the records sought with 'reasonably sufficient detail' in light of both statutory guidance and case law" (emphasis in original)). By contrast to the requests considered in those cases, however, both parts of the FOIA request at issue are more precisely defined by subject matter.

Civil Division files would need to be searched" without including any "estimate of the time required to conduct [the] requested search, the cost of such a search, or the number of files that would have to be manually searched").[6]  EPA's affidavit similarly provides no details to substantiate a claim of undue burden in complying with the plaintiff's FOIA request and therefore the agency has failed to carry its burden on summary judgment.

*** 

EPA has failed to demonstrate a viable legal basis for its refusal to conduct any search whatsoever in response to the plaintiff's straightforward FOIA request.  When the head of an agency makes a public statement that appears to contradict "the published research and conclusions of" that agency, Compl. ¶ 20, the FOIA provides a valuable tool for citizens to demand agency records providing any support, scientific or otherwise, for the pronouncement, and to oblige agencies to search for and produce any non-exempt responsive records.  Compliance with such a request "would help 'ensure an informed citizenry, vital to the functioning of a democratic society.'"  *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 16 (2001) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

IV. **CONCLUSION**

For the foregoing reasons, the plaintiff's cross-motion is granted and EPA's motion is denied.  EPA is directed: (1) by July 2, 2018, to conduct and complete the search for records responsive to both parts of the plaintiff's amended FOIA request; (2) to disclose promptly to the

---

[6] By contrast, where a request has been found to be overbroad or unduly burdensome, courts have relied, for example, on explanations that a response to the request would "require the agency to locate, review, redact, and arrange for inspection a vast quantity of material," *Am. Fed'n of Gov't Emps*, 907 F.2d at 209; "require a new contract . . . in the hundreds of millions of dollars," *Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 56 (D.D.C. 2015); or "would require a search of every email sent or received by 25 different employees throughout a two-year time period," *Hainey*, 925 F. Supp. 2d at 45.

18

plaintiff on a rolling basis any responsive, non-exempt records; and (3) by July 11, 2018, to produce to the plaintiff, an explanation for any documents withheld in full or in part. The parties shall, by July 31, 2018, file jointly a status report notifying the Court of any outstanding issues in dispute and, if necessary, propose a schedule to govern any further proceedings in this matter.

An appropriate Order accompanies this Memorandum Opinion.

Date: June 1, 2018

_____
BERYL A. HOWELL
Chief Judge